IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CASSI FIELDS**, an individual,<br><br>        Plaintiff,<br><br>        v.<br><br>**EMERGENCY SERVICES CONSULTING INTERNATIONAL, INC.**, an Oregon corporation,<br><br>        Defendant. | Case No. 3:23-cv-00912-IM<br><br>**OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Vanessa M. Anderson, Alchemy Law, LLC, 5305 River Road N., Suite B, Keizer, OR 97303. Theodore B. Kiviat and Adam L. Van Grack, Longman & Van Grack LLC, 10411 Motor City Drive, Suite 750, Bethesda, MD 20817. Attorneys for Plaintiff.

Thomas C. Sand and Katherine Bennett, Miller Nash LLP, 1140 SW Washington Street, Suite 700, Portland, OR 97205. John Bonello, Reston Law Group, LLP, 2100 Reston Parkway, Suite 450, Reston, VA 20191. Attorneys for Defendant.

**IMMERGUT, District Judge.**

      Plaintiff Dr. Cassi Fields sold her company to Defendant Emergency Services Consulting International ("ESCI") in 2017 pursuant to an Asset Purchase Agreement (the "APA"). The APA required ESCI to annually pay Fields a percentage of its "top line revenue." ESCI received a loan

PAGE 1 – OPINION & ORDER ON SUMMARY JUDGMENT

through the federal Paycheck Protection Program ("PPP") in 2020 that was forgiven in 2021. ESCI did not include this loan forgiveness as "top line revenue" in calculating Field's 2021 revenue share. Fields then filed suit against ESCI for breach of contract and declaratory relief.

Fields moves for partial summary judgment, ECF 40–41, arguing that ESCI breached the APA by excluding the loan forgiveness from its calculation of her 2021 revenue share. ESCI filed a cross-motion, ECF 53, arguing that the APA cannot be construed to include the loan forgiveness in "top line revenue." The parties also move for summary judgment on Fields's claim for declaratory relief invalidating a non-competition agreement; the parties agree that this issue is contingent on whether ESCI paid Fields her appropriate revenue share.

This Court agrees with Plaintiff that the ordinary meaning of the term "top line revenue" in the APA includes Defendant's gross income from all sources, not merely its "project revenue." But this Court agrees with Defendant that, even if loan forgiveness would ordinarily be included in top-line revenue, the unique circumstances of PPP loan forgiveness counsel in favor of excluding loan forgiveness under that program—and only that program—from Defendant's calculation of its top-line revenue. This Court will therefore grant summary judgment to Defendant on Plaintiff's claim for breach of the APA. The Court declines to grant summary judgment to either party on Plaintiff's claim for declaratory relief.

## STANDARDS

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017) (citing Fed. R. Civ. P. 56(a)). When, as here, both parties move for summary judgment, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir.

PAGE 2 – OPINION & ORDER ON SUMMARY JUDGMENT

2006) (internal quotation marks omitted). Either party may defeat summary judgment by showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). Even if the parties agree that there are no contested factual issues, it is ultimately the court's responsibility to determine the absence of genuine issues of material fact. *Fair Hous. Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

## BACKGROUND

On January 1, 2017, Plaintiff, an individual, and Defendant, an Oregon corporation, entered into the APA. Joint Statement of Agreed and Disputed Facts ("Agreed Facts"), ECF 51 ¶ 1. Under the APA, Plaintiff sold her business to Defendant in exchange for revenue-sharing payments over a ten-year period. *Id.* ¶ 2. Section 2.1.2 of the APA specifies that Plaintiff "shall be paid a portion of top line revenue on an annual basis provided such annual Revenue is above Two Million Five Hundred Thousand Dollars ($2,500,000)." *Id.* ¶ 3. A table then outlines the "percentage of Revenue paid" to Plaintiff, based on ESCI's annual revenue and the years since the sale. *Id.*

Section 2.1.2.2 of the APA provides:

> The Revenue of the Company shall be determined from the books and records of the Company according to accounting principles utilized by the Company and applied in a consistent manner by those who customarily prepare the company's financial statements. Revenue shall be the gross revenue received by the Company during the relevant time periods. The determination of the Company of the Revenue, as reasonably approved by the Board of Directors of the Company, shall be conclusively binding on the parties. In furtherance of the obligation of Buyer under this Section 2, Buyer covenants and agrees that it shall not, directly or indirectly, conduct its business other than in the name of the Company, it being the intention of this covenant to maximize the Revenue of the Company and to prevent any diversion of Revenue away from the Company."

*Id.* ¶ 6.

PAGE 3 – OPINION & ORDER ON SUMMARY JUDGMENT

In June 2020, Defendant received a $560,220 PPP loan. *Id.* ¶ 8. Defendant applied for and subsequently received forgiveness for this loan in June 2021. *Id.* ¶¶ 8–10. Defendant treated this loan forgiveness as revenue in its financial statements and included it in its calculation of "total revenue." *Id.* ¶¶ 11–12.

Defendant paid Plaintiff a revenue share of $178,590 for calendar year 2021. *Id.* ¶ 18. This amount reflects approximately 6.3% of Defendant's "project revenue" for 2021. *See id.* ¶¶ 7, 12. If the revenue share was calculated based on Defendant's "total revenue" for 2021 rather than its "project revenue," Plaintiff's revenue share would be substantially larger. *See id.*

## DISCUSSION

The central issue in this case is the meaning of "top line revenue" in the APA. Plaintiff contends that "top line revenue" means "gross revenue," which she equates with "total revenue." Plaintiff's Motion for Summary Judgment ("Pl. Mot."), ECF 41 at 11. Defendant contends that "top line revenue" is limited to "project revenue," which would not include the forgiven PPP loan. Defendant's Motion for Summary Judgment ("D. Mot."), ECF 53 at 7.

This Court concludes that the ordinary meaning of "top-line revenue" is gross revenue. Gross revenue is a more expansive category than project revenue and would ordinarily include a forgiven loan. Under the circumstances of this case, however, this Court concludes that PPP loan forgiveness should not be included in the category of gross revenue. Federal tax law specifically excludes these loans from the category of "gross income," reflecting the limited permissible uses of these loans and the unique circumstances of the COVID-19 pandemic. This Court will therefore grant summary judgment on Plaintiff's breach of contract claim to Defendant.

**A. Meaning of the Asset Purchase Agreement**

Oregon law uses a three-part test for contract interpretation.[1] "First, the court examines the extent of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." *Yogman v. Parrott*, 325 Or. 358, 361 (1997). A term in a contract is ambiguous "if its wording can, in context, reasonably be given more than one plausible interpretation." *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379 (2011). Whether a term is unambiguous, and if so, its meaning, are questions of law this Court may resolve on summary judgment. *May v. Chi. Ins. Co.*, 260 Or. 285, 292 (1971).

If the contractual provision is ambiguous, the court moves to the second step and examines extrinsic evidence of the parties' intent. *Yogman*, 325 Or. at 363–64. If extrinsic evidence does not resolve the ambiguity, the court proceeds to the last step and considers "appropriate maxims of construction." *Id.* at 364.

This case can be resolved at the first step. The ordinary meaning of "top-line revenue" is clear and it establishes that Plaintiff's revenue share must be calculated based on Defendant's gross revenue. The APA as a whole confirms this understanding. Because the meaning of the disputed provision is unambiguous, this Court need not engage in the second and third steps.

**1. Ordinary meaning**

"Oregon courts routinely rely on dictionary definitions . . . to understand the 'ordinary meaning' of a contract's terms." *Ross Dress for Less, Inc. v. Makarios-Or., LLC*, 39 F.4th 1113, 1118 (9th Cir. 2022) (citing *Yogman*, 325 Or. at 363). The disputed contractual provision in this case is Section 2.1.2 of the Asset Purchase Agreement, which provides that Fields is to "be paid

---

[1] This Court applies Oregon law because the APA provides that it "will be governed by the laws of the State of Oregon." ECF 54-1, § 16.5.

a portion of top line revenue on an annual basis." Agreed Facts, ECF 51 ¶ 3. Neither party offers any dictionary definitions of "top-line revenue" to support their arguments.

The term "revenue" means "[i]ncome from any and all sources; gross income or gross receipts." Black's Law Dictionary (12th ed. 2024). Other dictionaries confirm that "revenue" typically refers to "the total income produced by a given source," Webster's Third New International Dictionary, Unabridged (3d ed. 1961), "the return or yield from any kind of property, patent, service, etc.; income," Random House Webster's Unabridged Dictionary (2d ed. 2001), "[y]ield from property or investment; income" or "[a]ll the income produced by a particular source," American Heritage Dictionary of the English Language (5th ed. 2016), or simply "income," New Oxford American Dictionary (3d ed. 2010). From these definitions, this Court concludes that the term "revenue," if unmodified, would ordinarily be understood to refer to income that a business receives from any source.

The adjective "top-line" is not defined in a financial sense in any of the dictionaries cited above. *See, e.g., id.* (only defining "top-line" as "of the highest quality or ranking"). The Oxford English Dictionary, however, offers a definition of "top-line" as referring to "the top line in a company's profit and loss account; relating to or concerned with gross sales or revenue." Merriam-Webster's Collegiate Dictionary likewise defines "top-line" in this context as "relating to or concerned with gross sales or revenue." This Court therefore concludes that the ordinary meaning of the term "top line revenue" is gross revenue, or a company's total income from all sources before expenses or taxes have been deducted.

Defendant offers a handful of cases in which courts have calculated "top-line revenue" based on sales.[2] D. Mot., ECF 53 at 8. This Court is not persuaded that these cases have much if anything to say about the definition of the term. For example, *Crocs, Inc. v. Joybees, Inc.*, one of the cases proffered by Defendant, was a discovery dispute in which one party sought to compel documents related to the other company's sales. No. 21-cv-02859, 2024 WL 2873561, at *1 (D. Colo. Mar. 8, 2024). The discovery master observed that those documents were unavailable for 2020 and that "the only available data for [defendant's] sales from 2020 is topline revenue information." *Id.* While top-line revenue will usually bear a substantial relationship to sales, such that it was responsive to the discovery request, the case simply does not support Defendant's inference that top-line revenue can *only* mean sales and not revenue from other sources. Similarly, the reference to "top-line revenue" in *Padilla v. Community Health Systems, Inc.*, simply states that the defendant calculated its top-line revenue based on "the amount it billed for a given service, even if it did not expect to collect the full amount." No. 19-cv-00461, 2022 WL 3452318, at *4 (M.D. Tenn. Aug. 17, 2022). This is a statement about how the defendant in that case, a healthcare provider, accounted for the cost of providing care to uninsured patients, not what sources of revenue it did or did not include in calculating its top-line revenue.

**2. Structure**

In addition to the meanings of individual words, a court at the first step of contract interpretation "looks at the four corners of a written contract, and considers the contract as a whole with emphasis on the provision or provisions in issue." *Eagle Indus., Inc. v. Thompson*, 321 Or. 398, 405 (1995). This Court will therefore consider other provisions of the APA to

---

[2] This Court will not consider Defendant's other evidence—the Wikipedia page for "Revenue" and an article from AccountingTools.com—in ruling on this motion.

PAGE 7 – OPINION & ORDER ON SUMMARY JUDGMENT

determine whether they confirm or conflict with the ordinary meaning of "top-line revenue," discussed above. *See Williams*, 351 Or. at 378 (holding, on the first step, that the "court must, if possible, construe the contract so as to give effect to all of its provisions"). This Court concludes that the rest of the APA confirms that top-line revenue means gross or total revenue.

In addition to providing that Plaintiff's revenue share payments shall be based on "top line revenue," Section 2.1.2 refers to the company's "annual Revenue" and Plaintiff's resulting "percentage of Revenue." Agreed Facts, ECF 51 ¶ 3. The term "Revenue" is capitalized, which typically denotes a particular meaning of the term defined in the contract. And indeed, Section 2.1.2.2 defines "Revenue" as "the gross revenue received by the Company during the relevant time periods." *Id.* ¶ 6. The use of the defined term "Revenue" as the basis of Plaintiff's revenue share in Section 2.1.2 suggests "top line revenue" and "Revenue," and thus "top line revenue and "gross revenue," are synonymous.

### 3. Circumstances of formation

Although extrinsic evidence is ordinarily inappropriate at the first step of contract interpretation, Oregon courts have indicated that courts may "consider the circumstances underlying the formation of a contract to determine whether a particular contractual provision is ambiguous." *Batzer Constr., Inc. v. Boyer*, 204 Or. App. 309, 313, 317 (2006). This evidence further supports this Court's conclusion that top-line revenue means gross revenue.

Plaintiff points to an email from Defendant's former CEO to Plaintiff in July 2016, which told Plaintiff that her "top line revenue share" would be a percentage "based on the total earning levels." ECF 43-8, Ex. 8; Pl. Mot., ECF 41 at 14. A PowerPoint presentation attached to that email stated that Plaintiff's revenue share would be "taken directly from top-line revenue" and "based on audited total company revenue." ECF 43-9, Ex. 9 at 10. The PowerPoint contains a chart depicting a "revenue sharing scenario," which shows Plaintiff's revenue share being

PAGE 8 – OPINION & ORDER ON SUMMARY JUDGMENT

deducted from "total income," which is a combination of "project revenue" and "other revenue." *Id.* at 11. For each year, Plaintiff's proposed revenue share is 10% of the "total revenue" value, not the "project revenue" value. *Id.*; *see id.* at 8 (proposing Plaintiff receive "10% of top-line combined revenue"). Finally, Plaintiff also points to a report produced by Defendant in August 2016, which also states that Plaintiff's revenue share would be based on "annual total revenue." ECF 43-10, Ex. 10 at 20; Pl. Mot., ECF 41 at 15.

Defendant argues that these documents are not persuasive because they are "early negotiation document[s]" and not "contemporaneous communication[s] with the execution of the APA." Defendant's Response to Pl. Mot., ECF 47 at 18–19. But while this fact influences how this Court reads the documents, it does not rob them of all persuasive value, particularly given that Defendant has presented no evidence to suggest that the parties agreed to change the basis for Plaintiff's revenue share from "total income" to "project revenue" at some point between July 2016 and January 2017. The references to total revenue in these documents confirm this Court's reading of the APA, based on its structure and the ordinary meaning of the words used therein, as defining top-line revenue to mean gross revenue.

**B.  Treatment of PPP Loans under the APA**

This Court concludes that the ordinary meaning of the term "top-line revenue" includes all of Defendant's income from all sources. Ordinarily, a forgiven loan would qualify as income and be included in Defendant's gross income. *See United States v. Kirby Lumber Co.*, 284 U.S. 1, 3 (1931).

This conclusion does not end the analysis in this case, however, because of the unique circumstances and terms of the loan forgiveness at issue. Unlike other types of loan forgiveness, forgiven loans under the Paycheck Protection Program are excluded from the definition of gross income under federal tax law. *See* Coronavirus Aid, Relief, and Economic Security Act,

PAGE 9 – OPINION & ORDER ON SUMMARY JUDGMENT

§ 1106(i), Pub. L. No. 116-136, 134 Stat. 281, 301 ("[A]ny amount which (but for this subsection) would be includible in gross income of the eligible recipient by reason of forgiveness . . . shall be excluded from gross income."); *see also* Consolidated Appropriations Act, 2021, § 276(a), Pub. L. No. 116-1260, 134 Stat. 1182, 1979. Oregon has likewise determined that forgiven PPP loans are not included in a business's gross income for purposes of the state's Corporate Activity Tax because PPP loans are not "realized in the regular course of the taxpayer's trade." Or. Dep't of Revenue, *2020 Oregon New Law Update FAQ*, at 6, https://www.perma.cc/TC34-M89F (archived Nov. 9, 2024).

The federal and state exceptions to their definitions of gross income reflect the fact that PPP loan forgiveness, unlike ordinary loan forgiveness, may only be awarded for a restricted class of expenses. The PPP program was enacted in response to the unique circumstances of the COVID-19 pandemic and intended to provide small businesses with financial assistance necessary "to keep them afloat during the economic downturn." *See Lopez v. Bank of Am., N.A.*, 505 F. Supp. 3d 961, 964–67 (N.D. Cal. 2020) (describing the structure and purpose of the program). Loan forgiveness under the PPP program is accordingly limited by statute to certain categories of expenses, including payroll costs, rent, utilities, and certain operations and supplier costs. 15 U.S.C. § 636m(b). Robert Brown, Defendant's president and CEO, testified that Defendant used its PPP loan "to pay for employees' salaries and to keep them operating during the pandemic," explaining that the company "could have very well gone bankrupt" without the program. Deposition of James Robert Brown, Jr., ECF 56-7, Ex. 7 at 2. Plaintiff does not argue that paying out her revenue share would be a permissible use of the PPP loan.

This Court concludes that, under the circumstances, PPP loan forgiveness should not be treated as "top-line revenue" under the APA. If Defendant had received loan forgiveness from

any other source, Plaintiff would have a strong argument that such forgiveness qualifies as gross revenue and thus top-line revenue. But the PPP loan program and the forgiveness were, as Defendant puts it, "unique anomalies" that cannot be treated like other forms of income. D. Mot., ECF 53 at 11. Unlike other forms of income, the PPP loan forgiveness was not money that Defendant could put to any use; rather, Congress limited the program primarily to covering payroll costs during a period when many employees were unable to work in-person. Both federal and state governments have recognized these unique circumstances by excluding PPP loan forgiveness from the definition of "gross income" subject to taxation.

The same considerations that led the federal and state governments to that conclusion counsel in favor of excluding the PPP loan from the top-line revenue figure that forms the basis of Plaintiff's 2021 revenue share. While still income to Defendant in some sense, PPP loan forgiveness was an extraordinary form of income, available only in the unique circumstances of the COVID-19 pandemic and restricted by Congress to certain permissible uses. This Court therefore concludes that, even though "top line revenue" in the APA refers to gross or total income, Defendant's gross income should not include the PPP loan forgiveness for purposes of calculating Plaintiff's revenue share.

C. The Non-Competition Agreement

Plaintiff and Defendant agreed that Plaintiff would not compete with Defendant "for a period of two (2) years following termination of employment." Agreed Facts, ECF 51 ¶ 17. The agreement provided, however, that if Plaintiff's employment was "terminated by the Company without Cause," the obligations of the non-competition agreement would continue only if Plaintiff received all payments due under the APA. *Id*.

Defendant terminated Plaintiff's employment without cause on May 18, 2023. Answer, ECF 10 ¶ 16. For the reasons stated above, this Court concludes that Defendant's failure to

PAGE 11 – OPINION & ORDER ON SUMMARY JUDGMENT

include the PPP loan in its calculation of Plaintiff's 2021 revenue share did not constitute a failure to pay Plaintiff what she is due under the APA.

As discussed above, however, this Court concludes that the ordinary meaning of "top-line revenue" is slightly broader than "project revenue." Defendant states that it has previously excluded revenues apart from "project revenue" from its calculation of Plaintiff's revenue share. D. Mot., ECF 53 at 13 ("In prior years, Fields' Revenue Share was paid based on ESCI's project revenue."). It is not clear at this time whether Defendant's failure to include that revenue in its annual payments would constitute a sufficiently material breach to excuse Plaintiff from compliance with the non-compete clause, *see* Defendant's Response to Pl. Mot., ECF 47 at 18–19 (characterizing other revenue as "extremely nominal"), whether Plaintiff's acceptance of those payments absolves Defendant's breach, and whether summary judgment is justified as to either party. The Court will therefore decline to grant summary judgment on this claim.

## CONCLUSION

Defendant's Motion for Partial Summary Judgment, ECF 53, is GRANTED IN PART. Defendant is entitled to summary judgment on Plaintiff's claim for breach of the APA, but not on Plaintiff's claim for declaratory relief. Plaintiff's Motion for Partial Summary Judgment, ECF 40 , is DENIED.

**IT IS SO ORDERED.**

DATED this 23rd day of December, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge